Justice Robinson, dissenting.
 

 I respectfully but very earnestly dissent. In my opinion, the defendant in the case now before us (
 
 Nugent II
 
 ) was entitled to have the action summarily dismissed. In my view, this Court's message to the plaintiff should (in effect) be: "Enough is enough!"
 

 The plaintiff had her day in court in
 
 Nugent I
 
 (which civil action was commenced on June 27, 2014); and I do not believe that she has any right to further encumber the Superior Court with a new piece of litigation involving the very same set of operative facts as gave rise to the first litigation at issue (
 
 Nugent I
 
 ). It is my view that, having previously availed herself of the Superior Court's jurisdiction with respect to the alleged wrongfulness of her termination, plaintiff should not be permitted to litigate that matter once again in an entirely new civil action.
 

 While my respect for my colleagues is real, I am profoundly convinced that the majority's opinion (especially its application of the doctrine of
 
 res judicata
 
 ) is inconsistent with certain basic and venerable assumptions that underlie the body of Anglo-American jurisprudence. It is my definite conviction that
 
 Nugent II
 
 should not be allowed to go forward. The plaintiff had her opportunity to bring the issue of the allegedly wrongful termination of her employment before the Superior Court; she did so; she did not prevail; and that should be the end of it.
 
 See, e.g.
 
 ,
 
 Palazzo v. Alves
 
 ,
 
 944 A.2d 144
 
 , 155 (R.I. 2008) ("There is nothing more to be said; this case is over.");
 

 Arena v. City of Providence
 
 ,
 
 919 A.2d 379
 
 , 396 (R.I. 2007) ("It is time for this litigation to end.");
 
 Gunn v. Union Railroad Co.
 
 ,
 
 27 R.I. 320
 
 , 337,
 
 62 A. 118
 
 , 125 (1905) (quoting with approval an ancient Latin maxim: "
 
 Interest reipublicae ut sit finis litium
 
 "
 
 [1]
 
 ).
 

 In my judgment, the principles underlying the doctrine of
 
 res judicata
 
 should have resulted in the dismissal of
 
 Nugent II
 
 . As this Court has often stated, the doctrine of
 
 res judicata
 
 bars the relitigation of all issues that "were tried
 
 or might have been tried
 
 in an earlier action."
 
 Huntley v. State
 
 ,
 
 63 A.3d 526
 
 , 531 (R.I. 2013) (emphasis in original) (internal quotation marks omitted);
 
 see also
 

 Bossian v. Anderson
 
 ,
 
 991 A.2d 1025
 
 , 1027 (R.I. 2010) (same);
 
 Carrozza v. Voccola
 
 ,
 
 962 A.2d 73
 
 , 78 (R.I. 2009) (same);
 
 Ouimette v. State
 
 ,
 
 785 A.2d 1132
 
 , 1138 (R.I. 2001) ("
 
 Res judicata
 
 bars the relitigation of any issue that could have been litigated in a prior proceeding, even if the particular issue was not raised.").
 

 It is clear from the record that plaintiff was displeased over the fact that her employment with the Public Defender's Office was terminated. And she certainly was entitled to seek redress with respect to that termination. The plaintiff began the process of seeking redress by invoking the grievance and arbitration procedures that she was contractually entitled to invoke. Once those remedies did not produce a favorable result for her, plaintiff opted to seek judicial review. Accordingly, while represented by counsel, plaintiff filed a document entitled "Complaint" in the Superior Court (
 
 i.e.
 
 ,
 
 Nugent I
 
 ). In the body of said Complaint, plaintiff sought to have the adverse decision of the arbitrator vacated. That challenge to the arbitral award was the only count set forth in her Complaint (although it was not labeled specifically as a "count"). It is crucially important to bear in mind that, at that juncture, nothing prevented plaintiff and her attorney from including additional statute-based counts in her Complaint for the purpose of challenging what she deemed to have been a wrongful and discriminatory termination.
 

 Significantly, on the very day that plaintiff filed her Complaint in
 
 Nugent I
 
 in the Superior Court, she filed a charge of discrimination with the Rhode Island Commission for Human Rights.
 
 [2]
 
 However, for whatever reason, plaintiff and her attorney
 
 [3]
 
 chose not to include in her Complaint in
 
 Nugent I
 
 one or more separate and distinct counts pursuant to the anti-discrimination statutes, whereby she could have brought to the court's attention what she perceived to be the discriminatory motivation for her termination. No rule or other pertinent prohibition prevented plaintiff from including one or more such separate counts alleging discrimination. At the very least, plaintiff at all relevant times had immediately available to her a cause of action under the Rhode Island Civil Rights Act of 1990, as to which no
 type of administrative exhaustion is a prerequisite.
 
 See
 
 G.L. 1956 chapter 112 of title 42.
 
 [4]
 

 As the majority opinion correctly indicates, the defendant (the Public Defender's Office) reacted to plaintiff's Complaint in
 
 Nugent I
 
 by filing a motion to dismiss pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure. In due course, after a hearing in open court, that motion was granted and a "Final Judgment" was issued.
 

 The basis for the defendant's Rule 12(c) motion and the Superior Court's favorable reaction thereto was the fact that plaintiff lacked "standing" to seek vacation of the arbitrator's award.
 
 [5]
 
 It is very important to emphasize, however, that there would have been no similar impediment to plaintiff's including one or more additional counts in her Complaint alleging discrimination in violation of one or more statutes. (There would have been no necessity for union involvement in the preparation and filing of such a claim. And, I repeat, plaintiff was represented at that time by her own personal attorney.)
 

 It should go without saying that the Superior Court, a court of general jurisdiction, would have had subject matter jurisdiction over such discrimination counts. The fact that the only count then before the court was properly dismissed because of plaintiff's failure to satisfy the threshold criterion of standing certainly does not mean that one or more additional counts alleging discrimination would have been dismissed on that basis; plaintiff certainly would have had standing to allege discrimination in her own name. But the fact is that plaintiff and her lawyer
 
 chose
 
 not to include any such count in the Complaint. And such choices should have consequences.
 

 I believe that
 
 Nugent II
 
 merited dismissal on the basis of what I consider to be the fundamental jurisprudential principles that underlie the
 
 res judicata
 
 doctrine. It is true that the usual formulations of the doctrine of
 
 res judicata
 
 include a requirement that there have been a final judgment on the merits in the first case.
 
 See, e.g.
 
 ,
 
 In re Sherman
 
 ,
 
 565 A.2d 870
 
 , 872 (R.I. 1989) ("Res judicata serves as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in
 an earlier action.") (internal quotation marks omitted);
 
 see also
 

 Glassie v. Doucette
 
 ,
 
 159 A.3d 88
 
 , 95 (R.I. 2017) ;
 
 Bossian
 
 ,
 
 991 A.2d at 1027
 
 . However, I am convinced that the "one bite of the apple" principle is necessarily part and parcel of the
 
 res judicata
 
 doctrine.
 
 See generally
 

 United States v. California & Oregon Land Co.
 
 ,
 
 192 U.S. 355
 
 , 358,
 
 24 S.Ct. 266
 
 ,
 
 48 L.Ed. 476
 
 (1904) (Holmes, J.) ("[T]he whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time."). Accordingly, it is my view that, by choosing not to include in
 
 Nugent I
 
 such separate counts as to which there could in due course have been a final judgment on the merits, plaintiff should not now be permitted to rely on the absence of such a final judgment so as to have another day in court.
 

 Sound reasons of policy counsel against the same set of operative facts being the subject of repeated litigation in our courts. The following observation made by the late Justice Thomas Kelleher several decades ago remains as pertinent today as it was then:
 

 "Today, a trial judge is confronted with crowded dockets and numerous litigants who wish to have their controversies resolved. 'Judge time' now rates as a precious commodity. Res judicata does not permit one the luxury of trying his case on the installment plan."
 
 Perez v. Pawtucket Redevelopment Agency
 
 ,
 
 111 R.I. 327
 
 , 336,
 
 302 A.2d 785
 
 , 791 (1973).
 
 [6]
 

 I also note that, although the trial justice dismissed
 
 Nugent II
 
 on the basis of the doctrine of
 
 res judicata
 
 , his application of that doctrine to this case was conceptually quite different from the
 
 res judicata
 
 reasoning that I think should govern this particular case. My simple but emphatic point in this dissent is that plaintiff had every chance to allege discrimination when she availed herself of the jurisdiction of the Superior Court by filing her Complaint in
 
 Nugent I
 
 . She and her attorney chose not to do so, and such choices should be outcome-determinative. I firmly believe that
 
 Nugent II
 
 merited dismissal on
 
 res judicata
 
 grounds due to plaintiff's complete failure to have alleged employment discrimination in her Complaint in
 
 Nugent I
 
 , regardless of the fact that there was no final judgment on the merits in
 
 Nugent I
 
 .
 
 See
 

 Bossian
 
 ,
 
 991 A.2d at 1027
 
 ("This Court has unequivocally held as follows: '
 
 Res judicata
 
 , or claim preclusion, prohibits the relitigation of all issues that were tried
 
 or might have been tried
 
 in the original suit * * *.' ") (emphasis in original) (quoting
 
 Carrozza
 
 ,
 
 962 A.2d at
 
 78 ). The fact that an allegation of discrimination was not made in
 
 Nugent I
 
 when it could have been made suffices, in my considered judgment, for the principles underlying the doctrine of
 
 res judicata
 
 to apply.
 

 Accordingly, I respectfully but unblinkingly dissent.
 

 The quoted Latin maxim can be translated as follows: "It is in the interest of the republic that there be an end to litigation."
 

 I consider it to be of great importance to bear in mind that, at the relevant time (
 
 viz.
 
 , when she commenced the
 
 Nugent I
 
 action), plaintiff clearly was of the belief that she was the victim of employment discrimination. As Part I.C of the majority opinion correctly states: "On the same day that she filed her complaint in
 
 Nugent I
 
 seeking judicial review of the arbitration award, June 27, 2014, Nugent also filed a charge with the Rhode Island Commission for Human Rights alleging employment discrimination."
 

 I consider it noteworthy that the Complaint in
 
 Nugent I
 
 was signed by plaintiff's personal attorney. This was not a situation where an attorney for the union for an aggrieved employee was seeking vacation of an adverse arbitral award.
 

 I am aware that, at the time that she filed the Complaint in
 
 Nugent I
 
 , plaintiff was not yet in possession of a Right to Sue Letter from the Rhode Island Commission for Human Rights-the issuance of such a letter being a condition precedent to the commencement of a civil action under the Rhode Island Fair Employment Practices Act, G.L. 1956 chapter 5 of title 28. However, in addition to the fact that, at the time that she filed her Complaint in
 
 Nugent I
 
 , she was entirely free to immediately include a discrimination count under the Rhode Island Civil Rights Act, plaintiff could have thereafter sought leave to amend her Complaint in
 
 Nugent I
 
 so as to add a count under the Fair Employment Practices Act once a Right to Sue Letter was issued (as indeed it eventually was). In that regard, it should be noted that this Court has indicated that, "although leave to amend a pleading lies within the sound discretion of a trial justice," Rule 15(a) of the Superior Court Rules of Civil Procedure "liberally permits amendment absent a showing of extreme prejudice."
 
 Weybosset Hill Investments, LLC v. Rossi
 
 ,
 
 857 A.2d 231
 
 , 236 (R.I. 2004) (internal quotation marks omitted);
 
 see also
 

 Medeiros v. Cornwall
 
 ,
 
 911 A.2d 251
 
 , 253 (R.I. 2006) ("[T]his court has consistently held that trial justices should liberally allow amendments to the pleadings.") (internal quotation marks omitted).
 

 The defendant's Rule 12(c) motion contended that plaintiff lacked standing to seek judicial review of the arbitration award-in view of the fact that, since there was no evidence that the union had breached its duty of fair representation, only the union and not plaintiff was entitled to seek judicial review of the award.
 

 See also
 

 Northern Trust Co. v. Zoning Board of Review of Town of Westerly
 
 ,
 
 899 A.2d 517
 
 , 520 (R.I. 2006) (mem.) ("We conclude by indicating that we are keenly aware of the judiciary's obligation to see to it that litigation be not unduly or improperly prolonged. * * * We are more than persuaded that the instant plaintiffs have had their day in court-and then some. The time has come for this litigation to end.");
 
 Thomas v. Ross
 
 ,
 
 477 A.2d 950
 
 , 953 (R.I. 1984) ("Trial on an installment-plan basis cannot be countenanced * * *.").