February 13, 2023

Gerald Degasparre            :

v.                           :

Fay Servicing, LLC, et al.   :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Gerald Degasparre[1]  :

v.  :

Fay Servicing, LLC, et al.  :

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**   The plaintiff, Gerald Degasparre, appeals from the entry of summary judgment in favor of the defendants, Fay Servicing, LLC (Fay) and Citibank, N.A., as Trustee of NRZ Pass-Through Trust VI (Citibank) (collectively defendants).   This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.   After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or

---

[1] At various points throughout the record, plaintiff's last name appears both as "Degasparre" and "DeGasparre."   We use the first iteration throughout this opinion because that is the spelling plaintiff included in his original complaint.   No disrespect is intended.

- 1 -

argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On October 22, 2007, plaintiff and his wife, Tracie Degasparre, executed a promissory note and mortgage with Beneficial Rhode Island, Inc. (Beneficial), secured by property located at 149 Sweet Avenue, Pawtucket, Rhode Island.[2] The principal amount owed on the note was $267,791.71. During the course of the loan, plaintiff entered into two settlement agreements with Beneficial to restructure some of the repayment terms of the loan.

On May 26, 2017, plaintiff defaulted on the loan. Fay began servicing the loan on July 1, 2017, and was granted power of attorney by the previous loan servicer, HSBC.[3] Beneficial later assigned the mortgage and note to Citibank. Fay continued to act as Citibank's servicer for the remainder of the loan period.

After plaintiff's default, Fay initiated the foreclosure process by mailing several notices to plaintiff as required by Rhode Island law and the mortgage terms— a notice of default, notice of mediation conference, notice of foreclosure counseling,

---

[2] We include Tracie Degasparre here for accuracy; however, she is not a party to this case.

[3] The record contains a document that grants Fay Servicing, LLC, power of attorney at the direction of HSBC and Beneficial.

- 2 -

and notice of sale (collectively the pre-foreclosure notices). On July 18, 2018, Fay sent plaintiff the notice of mediation conference, consistent with G.L. 1956 § 34-27-3.2, alerting plaintiff to the possibility of a foreclosure on his property and the availability of free resources to assist him in avoiding foreclosure. On July 19, 2018, Fay sent plaintiff the notice of default, including a statement of intent to accelerate the loan if the outstanding balance ($28,185.76) was not paid by August 23, 2018.

On November 8, 2018, Harmon Law Offices, P.C. (Harmon), on behalf of Fay, allegedly mailed plaintiff the notice of foreclosure counseling, as presumably required by § 34-27-3.1.[4] The plaintiff denied receiving this notice and further claimed that defendants never deposited the notice in the mail.

The mortgage specified the type of notice that the lender was required to send to the borrower prior to accelerating the loan in the event of default. Paragraph 17 provides, in relevant part:

> "Upon Borrower's breach of any covenant or agreement * * * Lender prior to acceleration *shall give notice* to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the

---

[4] As we discuss further in footnote 5, the validity of § 34-27-3.1 is somewhat unclear. *See* P.L. 2014, ch. 543, §§ 1-3; P.L. 2009, ch. 376, § 1; P.L. 2009, ch. 384, § 1. For purposes of this opinion, we treat the statute as though it was in effect at the time of foreclosure.

date specified in the notice *may result in acceleration of the sums secured by this Mortgage, and sale of the Property.* * * * If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the *STATUTORY POWER OF SALE*[.]" (Emphasis added.)

On May 31, 2019, defendants sent plaintiff the notice of sale. The defendants issued the notice under the statutory power of sale, provided for in the just-quoted paragraph 17. The notice alerted plaintiff that the foreclosure sale was scheduled for August 20, 2019, and that the sale would be advertised beforehand in *The Pawtucket Times*.

On August 20, 2019, plaintiff filed a complaint and a motion for a temporary restraining order and preliminary injunction to enjoin defendants from proceeding with the foreclosure sale. The same day, a justice of the Superior Court granted the temporary restraining order and continued the matter for a hearing on the preliminary injunction. The Superior Court later denied plaintiff's motion for preliminary injunction. A foreclosure sale was then held on September 3, 2019.

On February 13, 2020, defendants moved for summary judgment. The plaintiff objected to the motion and subsequently filed motions to strike four affidavits submitted by defendants and a motion to amend the complaint. The defendants objected to all four motions to strike and the motion to amend. A justice of the Superior Court heard arguments on all motions on November 30, 2020, and,

- 4 -

in a bench decision, he granted defendants' motion for summary judgment as to all of plaintiff's claims, and he denied plaintiff's four motions to strike and plaintiff's motion to amend.

The order and judgment granting summary judgment in favor of defendants entered on December 11, 2020. The plaintiff timely filed a notice of appeal on December 30, 2020.

## II

### Standard of Review

"This Court reviews a hearing justice's grant of a motion for summary judgment *de novo*." *Pineda v. Chase Bank USA, N.A.*, 186 A.3d 1054, 1056 (R.I. 2018). "We will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Dulong v. Merrimack Mutual Fire Insurance Company*, 272 A.3d 120, 125 (R.I. 2022) (quoting *Shorr v. Harris*, 248 A.3d 633, 636 (R.I. 2021)).

"[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Bayview Loan Servicing, LLC v. Providence Business Loan Fund, Inc.*, 200 A.3d

153, 156 (R.I. 2019) (quoting *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018)).

When we review a ruling on a motion to strike, we review whether the hearing justice abused his or her discretion. *See Salvatore v. Palangio*, 247 A.3d 1250, 1258 (R.I. 2021) (citing *Long v. Dell, Inc.*, 93 A.3d 988, 1005 (R.I. 2014) (establishing abuse of discretion as this Court's standard of review for motions to strike)).

"We accord great deference to the decision by a hearing justice to grant or deny a motion to amend and will not disturb his or her decision unless he or she abused his or her discretion." *Bank of America, N.A. v. Fay*, 242 A.3d 38, 43 (R.I. 2020) (brackets omitted) (quoting *CACH, LLC v. Potter*, 154 A.3d 939, 942 (R.I. 2017)). At the discretion of the hearing justice, Rule 15(a) of the Superior Court Rules of Civil Procedure "liberally permits amendment absent a showing of extreme prejudice." *Granoff Realty II, Limited Partnership v. Rossi*, 823 A.2d 296, 298 (R.I. 2003) (quoting *Wachsberger v. Pepper*, 583 A.2d 77, 78 (R.I. 1990)). "However, a court need not grant leave to amend a pleading when doing so would unduly prejudice the nonmoving party." *Weybosset Hill Investments, LLC v. Rossi*, 857 A.2d 231, 236 (R.I. 2004).

# III

## Discussion

On appeal, plaintiff argues that the hearing justice erred (1) by granting summary judgment in favor of defendants; (2) by denying plaintiff's motions to strike; and (3) by denying plaintiff's motion to amend. We review the hearing justice's rulings on each of these motions in turn.

## Motion for Summary Judgment

The plaintiff raises several arguments opposing the hearing justice's decision to grant defendants' motion for summary judgment. First, plaintiff submits that a genuine dispute of material fact remains as to whether defendants properly provided him with a notice of foreclosure counseling consistent with § 34-27-3.1. Second, plaintiff avers that the notice of default did not strictly comply with the terms of paragraph 17 of the mortgage, particularly in light of this Court's decision in *Woel v. Christiana Trust, as Trustee for Stanwich Mortgage Loan Trust Series 2017-17*, 228 A.3d 339 (R.I. 2020). Third, plaintiff argues that the default notice contained an incorrect amount of arrearage, constituting an additional violation of the terms in paragraph 17. Fourth, plaintiff urges that Fay must be held liable under the Rhode Island Fair Debt Collection Practices Act for the violations it allegedly committed in regard to the pre-foreclosure notices.

First, plaintiff argues that the hearing justice erred in granting summary judgment because there remains a dispute of material fact as to whether defendants mailed the notice of foreclosure counseling required by § 34-27-3.1.[5] Additionally, plaintiff claims that the hearing justice erred when he stated that the General Assembly repealed § 34-27-3.1 in 2014, thereby relieving defendants of any duty to send the notice.[6]

For the purposes of the case before us, we need not determine the current validity of § 34-27-3.1. The defendants do not challenge plaintiff's contention

---

[5] Under the statute, the mortgagee "shall provide" the mortgagor with "written notice of default and the mortgagee's right to foreclose by first class mail" "[n]o less than forty-five (45) days prior to initiating any foreclosure[.]" General Laws 1956 § 34-27-3.1(a), as enacted by P.L. 2009, ch. 376, § 1 and P.L. 2009, ch. 384, § 1. The notice must also "advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies[.]" Section 34-27-3.1(b), as enacted by P.L. 2009, ch. 376, § 1 and P.L. 2009, ch. 384, § 1. If the mortgagee fails to provide such notice, the foreclosure becomes void. *See* § 34-27-3.1(c), as enacted by P.L. 2009, ch. 376, § 1 and P.L. 2009, ch. 384, § 1.

[6] The legislative history of § 34-27-3.1 is somewhat unusual. The General Assembly enacted § 34-27-3.1 in 2009. Public Laws 2009, ch. 376, § 1; P.L. 2009, ch. 384, § 1. In 2014, the General Assembly passed an act that simultaneously amended the statute on notice of mediation conference (§ 34-27-3.2) and repealed the statute on notice of foreclosure counseling (§ 34-27-3.1). Public Laws 2014, ch. 543, §§ 1-2 (the repealing act). The repealing act also contained a sunset provision that read, "This act shall take effect ninety (90) days following passage and it shall expire on July 1, 2018." Public Laws 2014, ch. 543, § 3.

In 2018, the General Assembly extended the notice of mediation conference (§ 34-27-3.2), updating the expiration date from July 1, 2018, to July 1, 2023. Public Laws 2018, ch. 72, §§ 1-2. That same 2018 amending act, however, left the July 1, 2018 expiration date untouched as it pertains to the notice of foreclosure counseling

regarding § 34-27-3.1. Rather, they argue that "[r]egardless of the confusing effective period of the statute, the record unquestionably demonstrated compliance with § 34-27-3.1[.]" So too, the hearing justice predicated his decision on summary judgment on the "undisputed, uncontested evidence for purposes of this summary judgment motion, demonstrating that Fay sent plaintiff a notice of availability of mortgage counseling services" pursuant to § 34-27-3.1. As the status of § 34-27-3.1 was not a contested issue before the Superior Court, we shall not address it on appeal.

The plaintiff contends that defendants fell short of their statutory obligation under § 34-27-3.1 by failing to send the notice of foreclosure counseling and that his statement that he never received the document created a genuine issue of material fact. The hearing justice found that defendants offered incontrovertible evidence showing the notice was mailed in November 2018. The hearing justice also ruled that the evidence plaintiff submitted to contradict defendants' claim of mailing was insufficient to raise a dispute of material fact.

The statute instructs that the mortgagee "shall provide" the mortgagor with "written notice * * * by first class mail * * * at the address designated by the mortgagor[.]" Section 34-27-3.1(a), as enacted by P.L. 2009, ch. 376, § 1 and P.L. 2009, ch. 384, § 1. There is "ample precedent" that notice sent by certified or

---

(§ 34-27-3.1), arguably triggering that law back into effect. Nevertheless, the General Laws of Rhode Island 1956, Reenactment of 2011, indicates that § 34-27-3.1 was repealed in 2014.

first-class mail satisfies constitutional due process without proof of actual receipt. *Izzo v. Victor Realty*, 132 A.3d 680, 688 (R.I. 2016) (quoting *Jones v. Flowers*, 547 U.S. 220, 226 (2006)); *see Amy Realty v. Gomes*, 839 A.2d 1232, 1233, 1235 (R.I. 2004) (holding that "notice * * * sent by certified mail" according to a tax sale statute was constitutionally adequate notice and that "[a]ctual notice was not required"); *Harvey Realty v. Killingly Manor Condominium Association*, 787 A.2d 465, 468 (R.I. 2001) (recognizing that "[n]otice by mail" meets "a minimum constitutional precondition" because mailing is a method "certain to ensure actual notice" (quoting *Robert P. Quinn Trust v. Ruiz*, 723 A.2d 1127, 1129 (R.I. 1999))).

The plaintiff argues that the statutory imperative that the mortgagee "provide" written notice at least forty-five days before initiating foreclosure proceedings "required proof of delivery at a particular period of time." Thus, he contends, the hearing justice erred by equating the act of mailing a document with the act of providing a document. His argument misses the mark, however. Section 34-27-3.1(a) clearly states that written notice is to be provided by first-class mail.

This Court has long presumed that, if notice was mailed, notice was received. *See Larocque v. Rhode Island Joint Reinsurance Association*, 536 A.2d 529, 532 (R.I. 1988) ("[R]eceipt [of notice] may be presumed by proof of an ordinary mailing."); *Russell v. Buckley*, 4 R.I. 525, 525 (1857) ("Proof that a letter has been

- 10 -

mailed, properly directed to a person at the place of her residence, is presumptive proof that the letter has been received by such person.").

Given this presumption, it is clear that the mortgagee's sole obligation under § 34-27-3.1 is to *send* the notice of foreclosure counseling to the mortgagor by first-class mail. *See University Emergency Medicine Foundation v. Rapier Investments, Ltd*, 197 F.3d 18, 21 (1st Cir. 1999) ("[N]otice becomes effective upon mailing pursuant to the time-honored 'mailbox rule.'"). This Court has also noted that a postmark may serve as "conclusive (albeit not exclusive) evidence of the date of mailing." *Rivera v. Employees' Retirement System of Rhode Island*, 70 A.3d 905, 911 (R.I. 2013) (determining that notices may be deemed "sent" on the date of postmark when applying statutory deadlines).

Here, to prove that the notice was mailed, defendants produced two sworn affidavits—one from a Michael J. Paterno, who identified himself as the Trial and Mediation Specialist for Fay, and one from Banita M. Butcher of Harmon. Each affidavit stated that it was based on business records kept in the ordinary course of business and each affidavit swore that notice of the availability of mortgage counseling was mailed to the mortgagor by first-class mail. To be sure, the two affidavits listed different dates of mailing; the Paterno affidavit said notice was mailed on November 8, 2018, whereas the Butcher affidavit indicates that it was mailed on November 13, 2018. We do not consider this discrepancy to create a

contested issue of material fact so as to preclude summary judgment. Both affidavits clearly stated that the notice of mortgage counseling was in fact mailed by first class in November 2018.

The defendants additionally submitted the United States Postal Service (USPS) tracking records for the first-class mail, including postmarks. To refute defendants' claim of mailing, plaintiff supplied only a self-serving affidavit swearing that he never received the notice and printouts from the USPS website that displayed "Status Not Available" messages in connection with the tracking numbers defendants provided.

The plaintiff's attestation that he did not receive the notice is both facially deficient and legally inconsequential. A "bare assertion" from the nonmoving party "is clearly inadequate to withstand summary judgment given our repeated admonition that the nonmoving party cannot rest on allegations, denials in the pleadings, conclusions, or legal opinions." *Deutsche Bank National Trust Company, for Registered Holders of Ameriquest Mortgage Securities, Inc. v. McDonough*, 160 A.3d 306, 312 (R.I. 2017) (quoting *McGovern v. Bank of America, N.A.*, 91 A.3d 853, 858 (R.I. 2014)).

The plaintiff's sheer denial that he never received the notice of foreclosure counseling, devoid of any further evidence to support that assertion, is insufficient. *Compare Riel v. Harleysville Worcester Insurance Company*, 45 A.3d 561, 570 (R.I.

2012) (holding that the nonmoving party failed to "set forth evidence showing the existence of a disputed issue of material fact" where the party "averred that * * * they intended to take the deposition[s] of [certain] individuals" without ever entering any depositions in the record) (internal quotation marks omitted), *with Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57-58 (R.I. 2010) (concluding that an affidavit submitted by the nonmoving party accompanied by a detailed deposition corroborating the evidence in that affidavit was sufficient to raise a dispute of material fact sufficient to bar summary judgment).

The plaintiff's contention that the USPS website printouts sufficiently rebut defendants' evidence of mailing is misguided. *See Pimentel v. Deutsche Bank National Trust Company*, 174 A.3d 740, 745 (R.I. 2017) (holding that the nonmoving plaintiff "failed to provide any sufficient evidence beyond investigations that were conducted on the Internet to challenge the validity" of the moving-defendant's claim at summary judgment). It could be simultaneously true that defendants mailed the notice in November 2018 and that the status for these mailings later became "Not Available" on the USPS website. Because these two facts are not mutually exclusive, plaintiff has not raised a genuine dispute of material fact that requires "resolution at trial." *Riel*, 45 A.3d at 570 (quoting *Salisbury v. Stone*, 518 A.2d 1355, 1358 (R.I. 1986)).

Moreover, Rhode Island law demands only that notice be mailed, not that it be received. *See Larocque*, 536 A.2d at 532 (holding that "receipt may be presumed by proof of an ordinary mailing"); *see also Amy Realty*, 839 A.2d at 1235; *Harvey Realty*, 787 A.2d at 468. Thus, plaintiff's focus on his receipt of notice, or lack thereof, is irrelevant to our analysis.

The hearing justice did not err in concluding that defendants' affidavits and USPS tracking records sufficiently demonstrated that the notice was mailed. Further, the hearing justice did not err in determining that plaintiff's counter-evidence was inadequate to refute the presumption of mailing and/or raise a disputed issue of material fact. Based upon our *de novo* review, we are satisfied that adequate notice was accorded to plaintiff pursuant to § 34-27-3.1.

**Strict Compliance of the Default Notice with Paragraph 17**

Second, plaintiff claims that the notice of default did not "strictly comply" with mortgage paragraph 17, contravening this Court's recent ruling in *Woel*. In a matter of first impression, this Court held in *Woel* that, "[a]s a matter of contract law, strict compliance with the [notice] requirements contained in [the mortgage] is a condition precedent to acceleration and a valid foreclosure sale." *Woel*, 228 A.3d at 344 n.9, 345 (acknowledging that the federal courts in Rhode Island have addressed this issue and found "strict compliance" to be "a condition precedent to a valid foreclosure sale" (citing *Martins v. Federal Housing Finance Agency*, 214 F. Supp.

3d 163, 169 (D.R.I. 2016))); *cf. Pinti v. Emigrant Mortgage Company, Inc.*, 33 N.E.3d 1213, 1222 (Mass. 2015) ("It is hardly unfair or burdensome to require a mortgagee * * * to comply with the provisions * * * in one of its own mortgages by sending a notice that conforms to the language[.]").

This Court stressed the importance of strict compliance in nonjudicial foreclosure states, like Rhode Island, because foreclosure proceedings conducted "without immediate judicial oversight" expose mortgagors to greater risk of exploitation. *Woel*, 228 A.3d at 346, 346 n.11 (noting that other nonjudicial foreclosure states also adhere to a strict compliance standard).

Although plaintiff correctly indicates that the mortgage language from *Woel* is similar to the contract language used in his own mortgage, his reliance on *Woel* is misplaced. The plaintiff argues that the default notice Fay sent violated the strict compliance standard because it failed to warn him of defendants' right to invoke the statutory power of sale. The notice read that "[f]ailure to cure the default * * * may result in acceleration * * *, foreclosure by judicial proceeding where applicable, and sale of the property[,]" but did not use the precise phrase "statutory power of sale."

In *Woel*, this Court voided a nonjudicial foreclosure because the default notice did not notify the mortgagor of the right to cure the default *and* the right to reinstate the mortgage after acceleration, which were both guaranteed by the underlying mortgage contract. *Woel*, 228 A.3d at 346 (calling the default notice "misleading,

- 15 -

inaccurate, and, at best, incomplete" because the two rights are "not synonyms" and therefore both had to be included in the notice to satisfy strict compliance).

Here, there is no indication that the default notice misinformed or misled plaintiff as to any of his rights in advance of foreclosure. The notice Fay sent advised plaintiff of his rights both to cure default and to reinstate the mortgage after acceleration, which is the issue that *Woel* addressed. *Woel*, 228 A.3d at 346.[7]

Nor do we perceive that the lack of the precise terminology "statutory power of sale" results in the failure of the notice to strictly comply with the terms of the mortgage. In *Woel*, we stated that "a mortgagee may conduct a foreclosure sale of the property by exercising the statutory power of sale * * * so long as *the mortgage contract itself* gives the mortgagee the power to do so." *Woel*, 228 A.3d at 344-45 (emphasis added). Paragraph 17 of plaintiff's mortgage contract provides, "Lender,

---

[7] In a recent opinion, the United States Court of Appeals for the First Circuit held that a notice stating "[y]ou have * * * the right to assert in the foreclosure proceeding the non-existence of a default and/or the right to bring a court action to assert the non-existence of a default or any other defense" was misleading because it did not make clear that "the right to assert defenses 'in the foreclosure proceeding' is unavailable in a non-judicial foreclosure." *Aubee v. Selene Finance LP*, 56 F.4th 1, 3, 8 (1st Cir. 2022). The notice sent by defendants in the case before us, however, is not similarly flawed. It clearly informed plaintiff that he had "the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." It did not suggest that plaintiff could wait to assert such defenses in response to a lawsuit initiated by defendants.

at Lender's option * * * may invoke the STATUTORY POWER OF SALE[.]" Thus, defendants' option to exercise the statutory power of sale was clear.

Further, the hearing justice conducted a thorough analysis of the terms contained in paragraph 17 and found that the default notice strictly complied with all its guarantees. Paragraph 17 listed four pieces of information necessary to provide plaintiff with complete notice—"(1) the breach; (2) the action required to cure such breach; (3) a date * * * by which such breach must be cured; and (4) that failure to cure such breach * * * may result in * * * sale of the [p]roperty." The default notice that defendants sent contained all four of these elements. Paragraph 17 also required that defendants send plaintiff a notice of sale before proceeding with the foreclosure, which notice defendants mailed on May 31, 2019. Therefore, considering *Woel* and the terms of paragraph 17, we agree with the hearing justice's ruling that the default notice strictly complied with the mortgage.

### Amount of Arrearage

Third, and similar to the above, plaintiff alleges that the default notice did not strictly comply with paragraph 17 because it listed an inaccurate amount of arrearage. The crux of plaintiff's claim is that defendants improperly added late charges and corporate advance fees to the total amount due to cure default. The

- 17 -

plaintiff also avers that defendants failed to correctly account for payments he previously made pursuant to his settlement agreement with Beneficial.

The hearing justice conducted a detailed accounting of the disputed charges at the hearing on the motion for summary judgment, reviewing the settlement agreement with Beneficial, statements of payments made to Beneficial under its settlement agreement with plaintiff, and the default notice, which showed a line-by-line calculation of plaintiff's outstanding payments on the loan. We perceive no error with the hearing justice's accounting of the arrearage amount based on the evidence presented. *See Harris v. Turchetta*, 622 A.2d 487, 489-90 (R.I. 1993) (affirming on appeal a disputed amount of arrearage that the trial justice found by using oral testimony and a ledger card).

Further, the mortgage does not make any guarantee of accuracy, merely that the default notice will advise the mortgagor of "the breach" and "the action required to cure such a breach[.]" It is clear that defendants alerted plaintiff that he was in breach and that such breach could be cured by making a payment of $28,185.76.

Therefore, the hearing justice did not err in finding that neither the default notice nor the amount of arrearage listed violated the mortgage or prejudiced plaintiff.[8]

---

[8] Because all of plaintiff's underlying allegations fail, we need not reach the argument raised under the Rhode Island Fair Debt Collection Practices Act, G.L. 1956 chapter 14.9 of title 19.

**Motions to Strike**

The plaintiff filed four motions to strike four affidavits submitted by defendants—three that defendants submitted with their objection to plaintiff's motion for preliminary injunction and one that they submitted with their motion for summary judgment. "It is axiomatic that 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Mruk v. Mortgage Electronic Registration Systems, Inc.*, 82 A.3d 527, 534 (R.I. 2013) (quoting Super. R. Civ. P. 56(e)).

On appeal, plaintiff generally alleges that all four affidavits are hearsay because they lack foundation in the personal knowledge of the affiants. Before the hearing justice, plaintiff raised more specific criticisms concerning the affidavits, pointing to particular dates or facts that the various affiants allegedly could not have known based on their own personal knowledge. For example, plaintiff averred that Paterno, an employee of Fay and an affiant on its behalf, could not have made statements about plaintiff's default on May 26, 2017, based on his personal knowledge because, at that time, Fay was not the loan servicer for the mortgage. The hearing justice was unperturbed by this argument, merely noting that "knowledge can be based upon review of business records kept by Fay and others in the ordinary course of business related to the [m]ortgage loan at issue."

- 19 -

Where a party fails to "submit any evidence to support his contention that [an affiant's] familiarity with * * * business records is questionable[,]" "the trial justice [is] entitled to accept [the affiant's] sworn statement as true." *Mruk*, 82 A.3d at 534. Simply because an affiant is not privy to certain information firsthand, the affidavit may still meet the strictures of Rule 56(e) of the Superior Court Rules of Civil Procedure. *See id.* (reasoning that because the affiant "personally examined the documents attached to the affidavit" and was otherwise "familiar with [the loan servicer's] business records[,]" he had "laid an adequate foundation to establish his personal knowledge"); *Rhode Island Joint Reinsurance Association v. Santana-Sosa*, 92 A.3d 192, 198 (R.I. 2014) (stating that an affiant's testimony supported by personal review of "books and records" sufficed for purposes of Rule 56(e)); *see also Moura v. Mortgage Electronic Registration Systems, Inc.*, 90 A.3d 852, 857-58 (R.I. 2014) (holding that the affiant's averments that "the claims in his affidavit are based on personal knowledge, that [the loan servicer] is a mortgage servicer, and that the note is held by [the loan servicer]" satisfied Rule 56(e)).

In all four affidavits at issue, the affiants attested that their knowledge was based upon "books and records as they are kept in the ordinary course of business," or some similar statement. This type of attestation, although perfunctory, is nonetheless sufficient to satisfy Rule 56(e). *See Santana-Sosa*, 92 A.3d at 198.

Therefore, the hearing justice properly exercised his discretion in disposing of all four motions to strike.

## Motion to Amend

Finally, plaintiff moved to amend his original complaint. The hearing justice denied the motion to amend on futility grounds. The plaintiff now argues that the hearing justice erred in denying this motion and that his amended claims are not futile because (1) this Court's decision in *Woel*, which was published after plaintiff filed his original complaint, elucidated his claims that defendants failed to satisfy the mortgage's notice requirements;[9] (2) defendants' improper notice practices alleged herein violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692; and (3) the promissory note originally executed between plaintiff and Beneficial was a nonnegotiable instrument that could not be endorsed in blank.

A motion to amend may be denied at the discretion of the hearing justice for myriad reasons, including "undue delay, bad faith, undue prejudice to the opposing party, or, most relevant to this case, futility of the amendment[.]" *Gannon v. City of Pawtucket*, 200 A.3d 1074, 1080 (R.I. 2019) (quoting *IDC Properties v. Goat Island South Condominium Association, Inc.*, 128 A.3d 383, 393 (R.I. 2015)); *see* Super. R. Civ. P. 15(a). The hearing justice abuses this discretion only when the justice

---

[9] As discussed above, plaintiff's argument regarding this Court's holding in *Woel* is without merit.

fails to provide any justification for denying the motion to amend or forgoes a hearing on the motion altogether. *See Lomastro v. Iacovelli*, 56 A.3d 92, 95 (R.I. 2012) (applying the United States Supreme Court's interpretation of the identical language found in Rule 15(a) of the Federal Rules of Civil Procedure to this Court's understanding of the parallel state rule); *Medeiros v. Cornwall*, 911 A.2d 251, 254 (R.I. 2006) (reversing the lower court decision for abuse of discretion when the motion justice prematurely granted a motion to dismiss before hearing the merits of the motion to amend); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (interpreting Rule 15(a) of the Federal Rules of Civil Procedure).

In the case at bar, the hearing justice extended plaintiff a full opportunity to brief and present arguments on his motion to amend. After engaging in a colloquy with the parties on the substantive issues raised, the hearing justice issued a clearly reasoned decision denying the motion to amend, rooted in Rhode Island law.

Given the hearing justice's fair treatment of the motion, under the standard demanded by Rule 15(a), we determine that the justice exercised proper discretion. We therefore affirm the denial of the motion to amend.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The papers in this case may be remanded to that tribunal.

Justice Long did not participate.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Gerald Degasparre v. Fay Servicing, LLC, et al. |
| **Case Number** | No. 2021-52-Appeal.<br>(PC 19-8581) |
| **Date Opinion Filed** | February 13, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Suttell, C.J. Goldberg, Robinson, and Lynch Prata, JJ. |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>John B. Ennis, Esq.<br>For Defendants:<br><br>Carl E. Fumarola, Esq. |

SU-CMS-02A (revised November 2022)